UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>TIMOTHY PAUL RIENDEAU and<br>MARIETTE GEORGETTE RIENDEAU,<br><br>Debtors. | Chapter 13<br>Case No. 21-20089 |
| MARIETTE GEORGETTE RIENDEAU and<br>TIMOTHY PAUL RIENDEAU<br><br>Plaintiffs,<br><br>v.<br><br>TOWN OF SABATTUS, CHRISTOPHER<br>AMES and ANN FRENCH,<br><br>Defendants. | Adv. Proc. No. 21-02010 |

**MEMORANDUM OF DECISION ON MOTION FOR JUDGMENT ON THE PLEADINGS FILED BY THE TOWN OF SABATTUS AND MOTIONS FOR SUMMARY JUDGMENT FILED BY CHRISTOPHER AMES AND ANN FRENCH**

Timothy Paul Riendeau and Mariette Riendeau, debtors in the underlying chapter 13 bankruptcy case, commenced this adversary proceeding against the Town of Sabattus (the "Town"), Christopher Ames, and Ann French seeking avoidance of three separate transfers of their residence, located at 16 Rabbit Road, Sabattus, Maine (the "Property") (Docket Entry ("D.E.") 22) (the "Amended Complaint"). Following the Court's order issued on March 30, 2022, granting in part, and denying in part, a motion to dismiss filed by the Town, three of the original six counts remain: Count III – Fraudulent Transfer and Recovery of Property pursuant to 11 U.S.C. §§ 548 and 550 as against the Town; Count IV – Avoidance of Fraudulent Transfer

and Recovery of Property pursuant to 11 U.S.C. §§ 548 and 550 as against the Town and Mr. Ames; and Count V - Avoidance of Fraudulent Transfer and Recovery of Property pursuant to 11 U.S.C. §§ 548 and 550 as against Ms. French (D.E. 22).

Mr. Ames filed a motion seeking summary judgment (D.E. 46) (the "Ames MSJ"). The Town filed a motion for judgment on the pleadings which consisted of one paragraph incorporating by reference the arguments presented in the Ames MSJ (D.E. 49) (the "Town's Motion"). Ms. French the filed her own motion seeking summary judgment (D.E. 52) (the "French MSJ"). All three motions are premised upon the same set of undisputed material facts. For the reasons set forth below, the Court will deny the Town's Motion and grant the Ames MSJ and the French MSJ.

I.      **Relevant Factual and Procedural Background.**

On June 21, 2019, the Town recorded a lien against the Property in the Androscoggin County Registry of Deeds for 2018 real estate taxes. A second lien for 2019 taxes was recorded on July 24, 2020. On December 21, 2020, the Town automatically foreclosed on the Property pursuant to 36 M.R.S.A. § 943, Maine's automatic tax lien foreclosure process. The tax liability at the time totaled $4,500.00. The Town then issued a Notice of Tax Sale stating its intent to sell the Property to the bidder submitting the highest offer on or before April 19, 2021.

On April 15, 2021, Mr. Ames bid $38,100.00 to purchase the Property. Four days later, on the bid deadline, the Riendeaus filed a chapter 13 petition for relief. In their accompanying schedules, they listed an ownership interest in the Property, which they valued at $110,000.00. The next day, on April 20, 2021, the Town's Board of Selectmen approved Mr. Ames's offer as the highest bid. Anthony Ward, Town Manager for the Town of Sabattus, informed Mr. Ames of his prevailing bid in a letter dated May 6, 2021, which stated, in part,

2

> The previous owners of the property are still residing in the mobile home and filed for bankruptcy on the day of our bid opening. We confirmed with our counsel that the previous owners filing for bankruptcy did not influence our transaction, because the foreclosure occurred prior to their filing. I share this information for transparency reasons.

Affidavit of Christopher Ames, Exh. C. The Town transferred title to Mr. Ames by deed dated May 18, 2021. Mr. Ames then sold the Property to Ms. French ten days later for $50,000.00.

## II.     The Applicable Legal Standards.

Mr. Ames and Ms. French moved for summary judgment under Fed. R. Civ. P. 56, as made applicable to these proceedings by Fed. R. Bankr. P. 7056. To prevail, these parties must establish that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Hannon v. ABCD Holdings, LLC (In re Hannon), 839 F.3d 63, 69 (1st Cir. 2916) (*citing*, Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994)). The Court must draw all reasonable inferences in favor of the Riendeaus in determining whether Mr. Ames and Ms. French have met their burden. Id.

The Town seeks a judgment on the pleadings under Fed. R. Civ. P. 12(c), as made applicable to this proceeding by Fed. R. Bankr. P. 7012. Courts generally view motions under Fed. R. Civ. P. 12(c) through the same lens as motions under Fed. R. Civ. P. 12(b)(6), "accepting as true the factual allegations of the Complaint and drawing all inference in favor of [the plaintiffs]". In re Jackson Brook Inst., Inc., 280 B.R. 1, 4 (D. Me. 2002). *See also*, Hsin Chi Su v. F Elephant, Inc. (In re TMT Procurement Corp.), 2022 WL 38985 at *1 (5th Cir. Jan. 4, 2022); Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 240 (6th Cir. 2011); United States v. Wood, 925 F.2d 1580, 1581 (7th Cir. 1991).

**III.   The Motions.**

> A. *The Town's Motion must be denied because an automatic tax foreclosure under 36 M.R.S.A. § 943 does not, as a matter of law, establish reasonably equivalent value for purposes of 11 U.S.C. § 548.*

The Riendeaus seek to avoid the tax foreclosure as a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B) which provides, in relevant part, that "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . ."

The Town does not dispute the Riendeaus' allegations that the transfer at issue here was made within two years prior to the petition date, the Debtors were insolvent at the time of transfer, the total tax debt at the time of the transfer was $4,500.00, and the fair market value of the Property at the time exceeded $4,500.00.  The sole question presented with respect to Count III is whether the automatic tax foreclosure of the property under 36 M.R.S.A. § 943 satisfied the "reasonably equivalent value" element of 11 U.S.C. § 548(a)(1)(B), as a matter of law?

The Town and the Riendeaus agree that BFP v. Resolution Trust Corp., 511 U.S. 531 (1994) is the place to start in analyzing this issue, although they disagree as to the applicability of that holding to automatic tax foreclosures.  In BFP, the Supreme Court considered whether consideration received from a noncollusive mortgage foreclosure sale in conformance with applicable state law satisfies the reasonably equivalent value requirement of 11 U.S.C. § 548.  The Supreme Court ultimately decided that, provided the foreclosing party complied with all applicable state law requirements, the concept of "reasonably equivalent value" encompasses the price obtained in a noncollusive mortgage foreclosure sale.  BFP, 511 U.S. at 545.

4

Although BFP clearly resolved, with finality, the question of whether consideration paid as the result of a noncollusive mortgage foreclosure sale conducted in compliance with state law constitutes reasonably equivalent value, the extent to which this ruling may be applied has been the topic of extensive debate from the moment the Supreme Court issued the BFP opinion. That debate, which is central to the issue presented to this Court, centers on the language in an oft-cited, much-discussed footnote to the BFP opinion:

> We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different.

BFP, 511 U.S. at n.3. In the immediate aftermath of the BFP decision, a number of courts extended its holding to apply to tax lien foreclosure sales. *See*, *e.g.*, T.F. Stone Co., Inc. v. Harper, 72 F.3d 466 (5th Cir. 1995); Russell-Polk v. Bradley, 200 B.R. 218 (Bankr. E.D. Mo. 1996); In re Hollar, 184 B.R. 243 (Bankr. M.D.N.C. 1995); In re Lord, 179 B.R. 429 (Bankr. E. D. Pa. 1995); and In re McGrath, 170 B.R. 78 (Bankr. D.N.J. 1994). Notably, all of these cases involve tax lien foreclosure statutes which, unlike 36 M.R.S.A § 943, include a competitive bidding process. Under these circumstances, the courts concluded that the BFP rationale applies with equal force to a tax lien foreclosure sale because tax lien foreclosure statutes typically afford the same, or substantively similar, protections as mortgage foreclosure statutes. Those protections include some combination of notice, right of redemption, statutory requirements, and, critical to the discussion in this case, a competitive bidding process. *See*, Russell-Polk, 200 B.R. at 221; Hollar, 184 B.R. at 253; Lord, 179 B.R. 435-36; McGrath, 170 B.R. at 81.

Other courts, however, have held that BFP does not extend to strict foreclosure statutes which, like Maine's statute, are more akin to a forfeiture than an auction process. In fact, the United States Bankruptcy Court for the District of Connecticut refused to extend the BFP analysis to 36 M.R.S.A. § 943; the very statute at issue here. In re Wentworth, 221 B.R. 316

5

(Bankr. D. Conn. 1998). Noting that BFP held that competitive bidding in a forced sale defines the market, the Wentworth court determined that a strict foreclosure *eliminates* the market and, therefore, the tax liability does not in itself, as a matter of law, constitute reasonably equivalent value. *See also*, Duvall v. County of Ontario, New York, 2021 WL 5199639 at *5 (W.D.N.Y. Nov. 9, 2021) (holding that automatic tax foreclosure did not represent reasonably equivalent value where no auction occurred and the $22,434.40 in taxes owed "bore no rational relationship" to the value of the property which was allegedly no less than $91,000.00); Hampton v. Ontario County, New York, 588 B.R. 671, 677 (W.D.N.Y. 2018) (finding that the amount of a tax lien is not evidence of property value and, therefore, BFP, a materially different case, is inapplicable in a strict foreclosure context); (In re Yourelo Your Full-Service Relocation Corp. v. City of Revere, 2020 WL 6972549 at *6 (Bankr. D. Mass. Nov. 23, 2020) ("The Massachusetts strict foreclosure tax collection scheme does not provide any mechanism for determining the value of a property in relation to the amount of the tax lien or protections for the interests of general unsecured creditors of the taxpayer and, as such, directly conflicts with the legislative goals of Congress reflected in the fraudulent conveyance avoidance remedies of the Bankruptcy Code."). Courts have reached a similar conclusion in the context of 11 U.S.C. § 547. *See, e.g.*, Hackler v. Arianna Holdings Co. (In re Hackler), 938 F.3d 473, 479 (3d Cir. 2019); Buckskin Realty Inc. v. Windmont Homeowners Ass'n, Inc. (In re Buckskin Realty Inc.).

This Court agrees with the Wentworth court in finding that Maine's automatic tax foreclosure statute, 36 M.R.S.A § 943, does not establish reasonably equivalent value for the purposes of 11 U.S.C. § 548. The Court is mindful of the Town's argument that this determination may inject uncertainty in the automatic tax foreclosure process which apparently is the most commonly used method for collecting delinquent real estate taxes in Maine. However,

the Bankruptcy Code's fraudulent transfer prohibitions do not exempt municipal taxing authorities, rather they manifest the intention to "provide a comprehensive scheme to ensure fair and ratable distribution [of debtors' assets] among creditors in accordance with the priorities established by Congress." In re Yourelo Your Full-Service Relocation Corp., 2020 WL 6972549 at *6. Accordingly, the Amended Complaint properly states a claim for relief under Count III and the Town's Motion will be denied.

> B. The Ames MSJ will be granted because Mr. Ames is an immediate transferee who took for value, in good faith, and without knowledge of the voidability of the automatic tax foreclosure.

The Riendeaus seek to recover from Mr. Ames pursuant to 11 U.S.C. § 550(a)(2) which authorizes a trustee to recover the value of fraudulently transferred property from any immediate or mediate transferee. The Court, having found that Count III is a viable claim, must assume, for purposes of the Ames MSJ, that the automatic tax foreclosure transaction was fraudulent under 11 U.S.C. § 548. Mr. Ames argues, however, that even if the Court ultimately determines the initial transfer can be avoided, the Riendeaus cannot, as a matter of law, recover from him because he took for value and without knowledge of the voidability of the automatic tax foreclosure. See 11 U.S.C. § 550(b)(1).

There is no dispute that Mr. Ames is an immediate transferee or that he took "for value," having paid $38,100.00 to the Town as the successful bidder in a publicly noticed auction. The only question is whether Mr. Ames received the Property in good faith and without knowledge. The Riendeaus and Mr. Ames do not dispute the facts material to the good faith and knowledge elements, but they do disagree as to the import of those facts.

Courts often collapse the requirements of "good faith" and "without knowledge" into one another because both inquiries depend on what the transferee knew at the time of the transfer. In re Callas, 557 B.R. 647, 655 (Bankr. N.D. Ill. 2016); In re Lakeland Radiologists, Ltd., 2020 WL

7

Case 21-02010 Doc 77 Filed 09/30/22 Entered 09/30/22 15:12:36 Desc Main
Document Page 8 of 10

6928200 at *6 (Bankr. S.D. Ill. July 14, 2020). A transferee may lack good faith if he or she possesses sufficient knowledge to cause a reasonable person to investigate. Callas, 557 B.R. at 656; Bonded Fin. Servs. v. European Am. Bank, 838 F.2d 890, 897-98 (7th Cir. 1988). It should be noted, however, that the structure of 11 U.S.C. § 550 places the burden of monitoring the transaction on the initial transferee, which burden is greater than the inquiry notice required of subsequent transferees. Callas, 557 B.R. 657; Bonded Fin. Servs., 838 F.2d at 892-93. A transferee does not have a duty to investigate the transaction. In re Bower, 462 B.R. 347, 355 (Bankr. D. Mass. 2012). The purpose of the "good faith" and "without knowledge" requirements is to prevent an initial transferee from "washing" a fraudulent transfer through a third party. Bonded Fin. Servs., 838 F.2d at n. 3.

The Riendeaus contend that the Town Manager's May 6, 2021 letter informing Mr. Ames of his successful bid was sufficient to put Mr. Ames on notice that the automatic tax foreclosure transfer was voidable. Specifically, the Riendeaus argue that, having known the Town obtained the property through a tax foreclosure, once Mr. Ames became aware a bankruptcy case had been filed and that the Riendeaus continued to reside on the Property, he had sufficient knowledge to cause him, as a reasonable person, to investigate the voidability of the automatic tax foreclosure transfer.

The Court, however, finds that Mr. Ames was reasonable in his reliance upon the Town's reassurances that the bankruptcy filing had no impact on the transaction. While the Riendeaus argue that Mr. Ames should have sought advice from his own counsel instead of relying on the secondhand advice of the Town's counsel, that assertion flies in the face of the structure of 11 U.S.C. § 550 which, as noted above, places a greater burden on the initial transferee to monitor the transaction. It was entirely reasonable for Mr. Ames, faced with assurances from the initial

transferee that the transaction was sound, and having no independent duty to investigate the transaction, to proceed in purchasing the Property without first incurring the cost and delay of obtaining the opinion of legal counsel.

Second, even if Mr. Ames had obtained legal advice, the answer would not have been clear. The issue of the applicability of <u>BFP</u> to automatic tax foreclosure sales was a matter of first impression for this Court and, with no binding precedent, the outcome of that issue was hardly transparent. The Court therefore finds that Mr. Ames, having taken the Property for value, in good faith and without knowledge, is entitled to judgment as a matter of law. Summary judgment will enter in favor of Mr. Ames.

> C. *The French MSJ will be granted because Ms. French is relieved of liability under 11 U.S.C. § 550(b)(2), as the immediate good faith transferee of Mr. Ames.*

The Riendeaus also seek to avoid the transfer from Mr. Ames to Ms. French pursuant to 11 U.S.C. § 550(a)(2). However, because the Court ruled that Mr. Ames was a good faith transferee under 11 U.S.C. §550(b)(1), Ms. French, as a good faith transferee of Mr. Ames, is absolved of liability under 11 U.S.C. § 550(b)(2).

The Riendeaus argue that Ms. French is not a good faith transferee because the deed put her on notice that the automatic tax foreclosure sale was voidable. There is nothing in the record to suggest that Ms. French was aware of the timing of the automatic tax foreclosure relative to the bankruptcy filing or the extent of the tax liability. Further, even if she was aware, and she had sufficient notice to warrant additional investigation, she, like Mr. Ames, would have found the law on the voidability of automatic tax foreclosures under 11 U.S.C. § 548(a) to have been unsettled in this jurisdiction before today.

The Riendeaus also assert that Ms. French paid well below market value for the Property. To the extent that the Riendeaus contend this undermines any finding that Ms. French acted in

9

good faith, the Court disagrees. First, even under 11 U.S.C. § 550(b)(1), the Bankruptcy Code merely requires an immediate or mediate or transferee to take "for value," not the "reasonably equivalent value" required of an initial transferee under 11 U.S.C. § 548. Moreover, Ms. French purchased the property for $50,000.00, or $11,900.00 more than Mr. Ames paid as the successful bidder in a public auction. Finally, 11 U.S.C. § 550(b)(1) lists "for value" as an element distinct from "good faith" while 11 U.S.C. § 550(b)(2) mentions *only* good faith. The plain language of this statutory language, suggests that value is not a concern in determining whether the 11 U.S.C. § 550(b)(2) defense is available to an immediate or mediate transferee of a transferee found to have taken for value, in good faith and without knowledge of the voidability of the initial transfer.

The Court finds that, as a matter of law, Ms. French received the Property from Mr. Ames in good faith and, therefore, the French MSJ shall be granted.

## IV.  Conclusion.

For the foregoing reasons, the Court will enter separate orders denying the Town's Motion for Judgment on the Pleadings with respect to Count III and entering summary judgment in favor of Mr. Ames and Ms. French on Counts IV and V. Following entry of those orders, the sole surviving claim shall be Count III.