# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

### BAP NO. EP 22-037

_____

### Bankruptcy Case No. 21-20089-PGC
### Adversary Proceeding No. 21-02010-PGC

_____

### TIMOTHY PAUL RIENDEAU and
### MARIETTE GEORGETTE RIENDEAU,
### Debtors.

_____

### TIMOTHY PAUL RIENDEAU and
### MARIETTE GEORGETTE RIENDEAU,
### Plaintiffs-Appellants,

### v.

### CHRISTOPHER AMES,
### Defendant-Appellee.

_____

**Godoy, Chief Judge, and Cabán, and Katz, U.S. Bankruptcy Appellate Panel Judges.**

### <u>ORDER GRANTING MOTION TO DISMISS</u>

Timothy Paul Riendeau and Mariette Georgette Riendeau (the "Debtors") filed a notice of appeal with respect to the bankruptcy court's September 30, 2022 order (the "Ames Summary Judgment Order") granting summary judgment in favor of the defendant, Christopher Ames ("Ames"), on Count IV of their multi-count amended complaint (the "Amended Complaint") against several defendants seeking to avoid three consecutive transfers of their residence. Before us is Ames' Motion to Dismiss, asserting the appeal should be dismissed because the subject order is interlocutory. The Debtors oppose dismissal. For the reasons set forth below, we conclude the Ames Summary Judgment Order is not final and decline to exercise our discretion

to consider this interlocutory appeal.  Accordingly, the Motion to Dismiss is granted and the appeal is **DISMISSED**.

## BACKGROUND[1]

### I.    Pre-Petition Developments

On June 21, 2019, the Town of Sabattus, Maine (the "Town") recorded a lien against the Debtors' residence, located at 16 Rabbit Road (the "Property"), for unpaid 2018 real estate taxes. The Town recorded a second lien for 2019 taxes in July 2020.  On December 21, 2020, the Town automatically foreclosed on the Property pursuant to Me. Rev. Stat. Ann. tit. 36, § 943.[2]

---

[1]  The background facts set forth herein are adopted from the bankruptcy court's October 3, 2022 Amended Memorandum of Decision and supplemented by the bankruptcy court's docket.  See U.S. Bank N.A. v. Blais (In re Blais), 512 B.R. 727, 730 n.2 (B.A.P. 1st Cir. 2014) (stating the Panel "may take judicial notice of the bankruptcy court's docket and imaged papers").

References to "Bankruptcy Code" or to specific statutory sections are to 11 U.S.C. §§ 101-1532, unless otherwise noted.  All references to "Rule" are to the Federal Rules of Civil Procedure and all references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

[2]  That statute provides for "automatic foreclosure" as follows:

> The filing of the tax lien certificate in the registry of deeds shall create a tax lien mortgage on said real estate to the municipality in which the real estate is situated having priority over all other mortgages, liens, attachments and encumbrances of any nature, and shall give to said municipality all the rights usually incident to a mortgagee, except that the municipality shall not have any right of possession of said real estate until the right of redemption shall have expired.
>     . . . .
> In the event that the tax, interest and costs underlying the tax lien are paid within the period of redemption, the municipal treasurer or assignee of record shall prepare and record a discharge of the tax lien mortgage . . . .
>     . . . .
> The municipal treasurer shall notify the party named on the tax lien mortgage and each record holder of a mortgage on the real estate not more than 45 days nor less than 30 days before the foreclosing date of the tax lien mortgage . . . of the impending automatic foreclosure and indicating the exact date of foreclosure. . . .

Me. Rev. Stat. Ann. tit. 36, § 943.

The Debtors' tax liability at that time amounted to $4,500.00. The Town then issued a Notice of Tax Sale stating its intent to sell the Property to the bidder submitting the highest offer on or before April 19, 2021. On April 15, 2021, Ames bid $38,100.00 to purchase the Property.

## II.    The Bankruptcy Filing and Post-Petition Developments

Four days later, on the bid deadline, the Debtors filed a petition for chapter 13 relief. In their accompanying schedules, they listed an ownership interest in the Property, which they valued at $110,000.00. The next day, on April 20, 2021, the Town's Board of Selectmen approved Ames' offer as the highest bid. The Town Manager then informed Ames of his winning bid in a letter dated May 6, 2021, which stated, in relevant part:

> The previous owners of the property are still residing in the mobile home and filed for bankruptcy on the day of our bid opening. We confirmed with our counsel that the previous owners filing for bankruptcy did not influence our transaction, because the foreclosure occurred prior to their filing. I share this information for transparency reasons.

The Town transferred title to Ames by deed dated May 18, 2021. Ames sold the Property to Ann French ("French") ten days later for $50,000.00.

## III.    The Adversary Proceeding

### A.    The Complaint

On December 30, 2021, the Debtors commenced an adversary proceeding with a six-count complaint against the Town, Ames, and French seeking to avoid the three transfers of the Property. In February 2022, the Town filed a motion to dismiss, challenging five out of six counts of the Debtors' complaint. Thereafter, the Debtors filed the Amended Complaint, and the court conducted a hearing on the motion to dismiss as it related to that complaint. On March 30, 2022, the court entered an order granting the motion in part and denying it in part. Three Counts

of the Amended Complaint remained, either in part or in their entirety: Count III—Fraudulent

Transfer and Recovery of Property pursuant to §§ 548 and 550 against the Town; Count IV—

Avoidance of Fraudulent Transfer and Recovery of Property pursuant to §§ 548 and 550 against

the Town and Ames; and Count V—Fraudulent Transfer and Recovery of Property pursuant to

§§ 548 and 550 against French.[3]

### B.    The Motions

Ames filed a motion for judgment on the pleadings (the "Ames Motion for Judgment")

on April 19, 2022, arguing that the foreclosure of the Town's municipal tax lien should not be

subject to avoidance under § 548,[4] because a transfer resulting from a government entity's strict

foreclosure of a tax lien in accordance with applicable state law satisfied the reasonably

equivalent value element of that statute.  Two days later, Ames filed a motion for summary

judgment (the "Ames Summary Judgment Motion") on Count IV of the Amended Complaint to

the extent the Debtors sought to impose liability on him pursuant to § 550.  In the latter motion,

Ames contended that, even if the subject transfer were avoidable pursuant to § 548, he had no

liability to the Debtors under § 550(b)(1) because he purchased the Property from the Town for

value, in good faith, and without knowledge of the voidability of that transfer.  Accordingly,

Ames claimed he was entitled to judgment in his favor on Count IV.  Shortly thereafter, the

Town also filed a motion for judgment on the pleadings, incorporating by reference the

arguments presented in the Ames Motion for Judgment (the "Town's Motion for Judgment" and,

---

[3] Counts IV and V were partially dismissed, to the extent they alleged violations of §§ 547 and 549.

[4] Although the Ames Motion for Judgment sought judgment on Counts III, IV, and V, in his conclusion, Ames limited the requested relief to Count III, asserting the foreclosure of the Town's municipal tax lien should not be subject to avoidance under § 548.  Accordingly, the bankruptcy court appears to have treated the Ames Motion for Judgment as targeting Count III, exclusively, stating it was denying that motion as to Count III.  See Riendeau v. Town of Sabattus (In re Riendeau), Adv. Pro. No. 21-02010, 2022 WL 4855523, at *4 (Bankr. D. Me. Oct. 3, 2022).

collectively with the Ames Motion for Judgment, the "Motions for Judgment"). French subsequently filed a motion for summary judgment (the "French Summary Judgment Motion") on May 3, 2022, similarly arguing she should not be held liable under § 550 because she purchased the Property from Ames for value, in good faith, and without knowledge of the potential voidability of that transfer. French emphasized that she had no knowledge of the Debtors, their bankruptcy filing, or the possibility that the sale of the Property to Ames "was potentially for less than the fair market value of the Property."

### C.    The Rulings on the Motions

The bankruptcy court entered orders denying the Motions for Judgment, an order granting the French Summary Judgment Motion (the "French Summary Judgment Order"), and the Ames Summary Judgment Order. It memorialized those rulings in a single memorandum on September 30, 2022, <u>Riendeau v. Town of Sabattus (In re Riendeau)</u>, Adv. Pro. No. 21-02010, 2022 WL 4658588 (Bankr. D. Me. Sept. 30, 2022), which it amended three days later. <u>See</u> <u>In re Riendeau</u>, 2022 WL 4855523 (the "Amended Memorandum"). Although the bankruptcy court's grant of summary judgment on Count IV is the focus of this Order, our analysis necessarily involves the bankruptcy court's rulings on the other Counts as well. Accordingly, those rulings are summarized below.

### 1.    Count III Against the Town

In Count III, the Debtors asserted, because the Town was the "initial transferee," they were "entitled to recover the Property or the value of the [t]ransfer of the Property . . . ." The bankruptcy court observed that the Debtors' objective in Count III was to

> avoid the tax foreclosure as a fraudulent conveyance under . . . § 548(a)(1)(B) which provides, in relevant part, that "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or

> involuntarily . . . received less than a reasonably equivalent value in exchange for
> such transfer or obligation; and . . . was insolvent on the date that such transfer
> was made . . . or became insolvent as a result of such transfer . . . [.]"

Id. at *2 (alterations in original).  Concluding that the only question presented with respect to

Count III was "whether the automatic tax foreclosure of the [P]roperty under 36 M.R.S.A. § 943

satisfied the 'reasonably equivalent value' element of . . . § 548(a)(1)(B)," id., the court

answered that question in the negative.  Id. at *4.  In reaching this conclusion, the starting point

for—and indeed the crux of—the court's analysis was BFP v. Resolution Trust Corp., 511 U.S.

531 (1994).  Id. at *2.  There, the Supreme Court ruled that, provided the foreclosing party

complied with all applicable state law requirements, the concept of "reasonably equivalent

value" for purposes of § 548 encompasses the price obtained in a noncollusive mortgage

foreclosure sale.  Id. (citing BFP, 511 U.S. at 545).  As the bankruptcy court noted, however, the

BFP Court—in a footnote— explicitly left the door open as to whether its holding applied to tax

lien foreclosure sales.  See id. at *3 (citing BFP, 511 U.S. at 537 n.3).  The bankruptcy court

explained the consequence of the BFP footnote as follows:

> In the immediate aftermath of the BFP decision, a number of courts extended its
> holding to apply to tax lien foreclosure sales.  See, e.g., T.F. Stone Co., Inc. v.
> Harper, 72 F.3d 466 (5th Cir. 1995); Russell-Polk v. Bradley [(In re Russell-
> Polk)], 200 B.R. 218 (Bankr. E.D. Mo. 1996); [Hollar v. Myers (In re Hollar)],
> 184 B.R. 243 (Bankr. M.D.N.C. 1995); [Lord v. Neumann (In re Lord)], 179 B.R.
> 429 (Bankr. E.D. Pa. 1995); and [McGrath v. Simon (In re McGrath)], 170 B.R.
> 78 (Bankr. D.N.J. 1994).  Notably, all of these cases involve tax lien foreclosure
> statutes which, unlike 36 M.R.S.A. § 943, include a competitive bidding process.
> Under these circumstances, the courts concluded that the BFP rationale applies
> with equal force to a tax lien foreclosure sale because tax lien foreclosure statutes
> typically afford the same, or substantively similar, protections as mortgage
> foreclosure statutes.  Those protections include some combination of notice, right
> of redemption, statutory requirements, and, critical to the discussion in this case, a
> competitive bidding process.  See[ ] Russell-Polk, 200 B.R. at 221; Hollar, 184
> B.R. at 253; Lord, 179 B.R. at 435-36; McGrath, 170 B.R. at 81.
>
> Other courts, however, have held that [BFP] does not extend to strict foreclosure
> statutes which, like Maine's statute, are more akin to a forfeiture than an auction

> process. In fact, the United States Bankruptcy Court for the District of
> Connecticut refused to extend the BFP analysis to 36 M.R.S.A. § 943[,] the very
> statute at issue here. [Wentworth v. Town of Acton (In re Wentworth)], 221 B.R.
> 316 (Bankr. D. Conn. 1998). Noting that BFP held that competitive bidding in a
> forced sale defines the market, the Wentworth court determined that a strict
> foreclosure *eliminates* the market and, therefore, the tax liability does not in itself,
> as a matter of law, constitute reasonably equivalent value.

Id. at *3 (collecting cases).

After emphasizing that Me. Rev. Stat. Ann. tit. 36, § 943 was "more akin to a forfeiture

than an auction process," id., the bankruptcy court agreed with the Wentworth court that Maine's

automatic tax foreclosure statute does "not establish reasonably equivalent value" for purposes of

§ 548. Id. at *4. Accordingly, the court ruled that Count III properly stated a claim for relief

against the Town and denied both Motions for Judgment. See id.

### 2.    Count IV Against Ames

As for Count IV, as noted above, the Debtors sought to recover the "Property or the value

of the [t]ransfer" from Ames pursuant to § 550.[5] Having found that Count III was "a viable

claim," the court assumed, for purposes of the Ames Summary Judgment Motion and Count IV,

"that the automatic tax foreclosure transaction was fraudulent under . . . § 548." Id. The court

went on to conclude that, as an immediate transferee who took for value, in good faith, and

without knowledge of the voidability of the automatic tax foreclosure, Ames was entitled to

judgment as a matter of law on Count IV. Id. (citing 11 U.S.C. § 550(b)(1)). Central to the

court's conclusion was its finding that Ames "was reasonable in his reliance upon the Town's

reassurances that the bankruptcy filing had no impact on the transaction." Id. at *5. The court

elaborated: "[E]ven if . . . Ames had obtained legal advice, the answer would not have been

clear. The issue of the applicability of BFP to automatic tax foreclosure sales was a matter of

---

[5] Section 550(a)(2) authorizes a trustee to recover the value of fraudulently transferred property from any immediate or mediate transferee. See 11 U.S.C. § 550(a)(2).

first impression for this Court and, with no binding precedent, the outcome of that issue was hardly transparent."  Id.  Thus, summary judgment entered in favor of Ames on Count IV.

### 3.    Count V Against French

Finally, in Count V, the Debtors sought to "recover the Property or the value of the [t]ransfer from French" pursuant to § 550.  The court granted the French Summary Judgment Motion as to that Count, reasoning French was relieved of liability as "the immediate good faith transferee" of Ames.  Id.  It explained: "[B]ecause the Court ruled that . . . Ames was a good faith transferee under . . . . § 550(b)(1), . . . French, as a good faith transferee of . . . Ames, [wa]s absolved of liability under . . . § 550(b)(2)."  Id.  Among other things, the court rejected the Debtors' argument that "the deed put her on notice that the automatic tax sale was voidable," reasoning: "There is nothing in the record to suggest that . . . French was aware of the timing of the automatic tax foreclosure relative to the bankruptcy filing or the extent of the tax liability." Id.  Having concluded that French received the Property from Ames in good faith, the court granted the French Summary Judgment Motion.  Id.

After the entry of the French Summary Judgment Order, the Ames Summary Judgment Order, and the orders denying the Motions for Judgment, "the sole surviving claim" in the Amended Complaint was Count III against the Town.  In re Riendeau, 2022 WL 4855523, at *5. At that juncture, the Debtors commenced this appeal.[6]

## IV.    The Appeal

### A.    The Motion to Dismiss

Ames filed the Motion to Dismiss on October 14, 2022, urging the Panel to dismiss this appeal as "premature."  He cites Catlin v. United States, 324 U.S. 229 (1945), for the proposition

---

[6]  The Debtors also appealed the French Summary Judgment Order.  See Riendeau v. French (In re Riendeau), BAP No. EP 22-038.

that a judgment is final only if it conclusively determines all claims of all parties to an action and emphasizes that the claims against the Town have yet to be litigated. Ames also highlights that the bankruptcy court has not made "a ruling on finality" pursuant to Rule 54(b), the rule governing multi-claim and multi-party actions.

### B.    The Debtors' Objection to the Motion to Dismiss

The Debtors oppose the Motion to Dismiss, arguing the Ames Summary Judgment Order qualifies as a final order and therefore, the Panel has jurisdiction over it pursuant to 28 U.S.C. § 158(a)(1). In the event the Panel concludes the subject order is not final, the Debtors argue, alternatively, that the Panel should grant leave to appeal under one of two precepts conferring appellate jurisdiction: (1) application of the 28 U.S.C. § 158(a)(3) criteria governing review of interlocutory orders; or (2) the collateral order doctrine. We address the Debtors' arguments in turn.

## APPELLATE JURISDICTION

### I.    Final Orders: Appealable as of Right

### A.    Our Jurisdiction, Generally

We have jurisdiction to hear appeals from final orders and judgments of the bankruptcy court. 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020). "A decision is final if it ends the li[ti]gation on the merits and leaves nothing for the court to do but execute the judgment." Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998) (citations and internal quotation marks omitted). As the Supreme Court stated, "orders in bankruptcy cases may be

immediately appealed if they finally dispose of discrete disputes within the larger case." <u>Bullard v. Blue Hills Bank</u>, 575 U.S. 496, 501 (2015) (citation and internal quotation marks omitted).  In cases involving adversary proceedings, "'[t]he disposition of a discrete dispute' generally is considered to mean the resolution of an adversary proceeding within the bankruptcy case."  <u>In re Bank of New Eng. Corp.</u>, 218 B.R. at 647 (quoting <u>Robinson v. Robinson (In re Robinson)</u>, 194 B.R. 697, 700 (Bankr. N.D. Ga. 1996)).

### B.    Final Order Analysis

The pendency of the contested Motion to Dismiss requires us to assay our jurisdiction.[7] The Debtors' appeal of the Ames Summary Judgment Order comes within "the general rule that orders disposing of fewer than all claims or parties" in multi-count or multi-party litigation "are generally interlocutory and not appealable as of right upon entry."  <u>Id.</u> (citing <u>Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington)</u>, 992 F.2d 3, 6 n.3 (1st Cir. 1993); Fed. R. Civ. P. 54(b); <u>IBI Sec. Serv., Inc. v. Nat'l Westminster Bank USA (In re IBI Sec. Serv., Inc.)</u>, 174 B.R. 664, 668-69 (E.D.N.Y. 1994)); <u>see also</u> <u>Nichols v. Cadle Co.</u>, 101 F.3d 1448, 1449 n.1 (1st Cir. 1996) ("Ordinarily, a judgment is final (and, thus, appealable . . .) only if it conclusively determines all claims of all parties to the action.") (citation omitted); <u>Correia v. Deutsche Bank Nat'l Tr. Co. (In re Correia)</u>, 452 B.R. 319, 322 (B.A.P. 1st Cir. 2011) (stating an order granting summary judgment is a final order for purposes of appeal only "where no counts against any defendants remain") (citation omitted).  Where, as here, an appealed order disposes of fewer than all claims or parties, we have repeatedly declined to accept jurisdiction.  <u>See, e.g.</u>, <u>Boudreau v. United States (In re Boudreau)</u>, BAP No. RI 18-036, slip op. at 10-11 (B.A.P. 1st Cir. Oct. 12, 2018); <u>CRS Steam, Inc. v. Eng'g Res., Inc. (In re CRS Steam, Inc.)</u>, 233 B.R. 901, 906-07

---

[7]  <u>See also</u> Fed. R. Bankr. P. 8004(d) (permitting us to treat the Debtors' timely notice of appeal as a motion for leave to appeal).

(B.A.P. 1st Cir. 1999); Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724, 726 (B.A.P. 1st Cir. 1998); In re Bank of New Eng. Corp., 218 B.R. at 647, 654.

Rule 54(b), made applicable by Bankruptcy Rule 7054, however, permits the bankruptcy court to enter a "final judgment as to fewer than all the parties or all the claims in a multi-party action 'upon an express determination that there is no just reason for delay' in entering judgment."[8]  Rivera Siaca v. DCC Operating, Inc. (In re Olympic Mills Corp.), 333 B.R. 540, 547 (B.A.P. 1st Cir. 2005) (citation and internal quotation marks omitted), aff'd, 477 F.3d 1 (1st Cir. 2007).  Here, although the Debtors' claims against the Town were not yet adjudicated, the bankruptcy court made neither an express determination that there "[wa]s no just reason for delay" nor a direction for the "entry of a final judgment."  Fed. R. Civ. P. 54(b).  Under these circumstances, the Ames Summary Judgment Order is subject to revision "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).[9]  It is well settled in this circuit that where "a plaintiff sues multiple parties and [the lower] court disposes of the claims against some but not all of the defendants, the [lower]

---

[8]  Rule 54(b) specifically provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

[9]  A review of the bankruptcy court's docket bears this out.  On November 1, 2022, well after the commencement of this appeal, the Debtors filed a motion for extension of time to file a Rule 59(e) or 60(b) motion, which the bankruptcy court granted on December 7, 2022.

court's decision is ordinarily not a final, appealable judgment unless the [lower] court separately certifies judgment against the relevant defendants pursuant to Rule 54(b) . . . ." Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 32 (1st Cir. 2006) (citation omitted); see also Pahlavi v. Palandjian, 744 F.2d 902, 903 (1st Cir. 1984) (same); Bowling Machs., Inc. v. First Nat'l Bank of Bos., 283 F.2d 39, 41 (1st Cir. 1960) (stating that absent Rule 54(b) certification, "the matter remains open to revision, and hence the judgment as it is is not final").

Without a proper Rule 54(b) certification, the Ames Summary Judgment Order is not a final judgment and the Debtors are not entitled to appeal as of right under 28 U.S.C. § 158(a)(1), despite their assertion to the contrary. Indeed, more remains to be done—including the adjudication of Count III against the Town. The appropriate inquiry, therefore, becomes whether leave to appeal may issue under either the collateral order doctrine or by applying the criteria governing 28 U.S.C. § 158(a)(3) review of interlocutory orders. See In re Bank of New Eng. Corp., 218 B.R. at 648-54 (considering whether to exercise discretionary authority to grant leave to appeal under these precepts after concluding order was not appealable as of right absent Rule 54(b) certification); see also Merena v. Merena (In re Merena), BAP No. MT-08-1342-PADH, 2009 WL 4914650, at *3 n.6 (B.A.P. 9th Cir. Dec. 10, 2009) ("Absent a certification by the bankruptcy court under . . . Rule 54(b), . . . the bankruptcy court's decision could only be appealed with permission of the Panel.") (citation omitted); Belli v. Temkin (In re Belli), 268 B.R. 851, 856 (B.A.P. 9th Cir. 2001) (determining order was not final absent Rule 54(b) certification, but considering whether to grant leave to appeal under 28 U.S.C. § 158(a)(3)). The Debtors have invoked both precepts in their objection to the Motion to Dismiss as alternative grounds for hearing this appeal.

## II   Interlocutory Orders: Appealable with Leave

### A.   28 U.S.C. § 158(a)

Since 28 U.S.C. § 158(a) "does not provide any express criteria for how . . . federal courts should exercise their discretion in determining whether to preside over an interlocutory appeal, courts must look to [28 U.S.C.] § 1292(b), which sets the standard for the jurisdiction over interlocutory appeals."[10] P.R. Asphalt, LLC v. Betteroads Asphalt, LLC, No. 19-1661 (ADC), 2020 WL 2843031, at *10 (D.P.R. May 29, 2020) (citing In re Rodriguez-Martinez, 541 B.R. 539, 541 (D.P.R. 2015)).  Courts within the First Circuit have "made clear that the '[a]pplication of [28 U.S.C. §] 158(a)(3) review of interlocutory orders mirrors application of § 1292(b).'" Id. (quoting In re Rodriguez-Martinez, 541 B.R. at 542) (some alterations in original); see also Bailey v. United States (In re Bailey), 592 B.R. 400, 408-09 (B.A.P. 1st Cir. 2018) (explaining that First Circuit courts have, "by analogy," turned to the analysis used under § 1292(b)").

We consider the following § 1292(b) factors when determining whether to exercise our discretion to review an interlocutory appeal: "(1) whether the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) whether an immediate appeal from the order might materially advance the ultimate termination of the litigation." In re Bailey, 592 B.R. at 409 (citations omitted).  All three elements must be established. Id. (citing WM Capital Partners 53, LLC v. Allied Fin., Inc., No. 17-2015 (ADC), 2018 WL 1704474, at *2 (D.P.R. Mar. 30, 2018)); see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff), Adv. Pro. No. 08-01789 (SMB), 2017 WL 4417701, at *3 n.5 (S.D.N.Y. Oct. 3, 2017) (observing that, because the § 1292(b) factors

---

[10]   Hereinafter, references to "§ 1292(b)" are to 28 U.S.C. § 1292(b).

are "conjunctive," court did not need to consider other factors after appellant failed to satisfy one element); Carr v. Carr (In re Meridian Med. Sys., LLC), No. 2:16-CV-38-DBH, 2016 WL 3221558, at *3 (D. Me. June 10, 2016) (stating the appellant has the burden of satisfying the three § 1292(b) factors).  The First Circuit instructs that leave to appeal "should be used . . . only in exceptional circumstances . . . ."  In re San Juan Dupont Plaza Hotel Fire Litig., 859 F.2d 1007, 1010 n.1 (1st Cir. 1988) (citation and internal quotation marks omitted); see also Camacho v. P.R. Ports Auth., 369 F.3d 570, 573 (1st Cir. 2004) (observing that § 1292(b) is "meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare").  Thus, our discretion to decline to hear interlocutory appeals by applying the § 1292(b) criteria is "broad."  Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 883 n.9 (1994).

The Debtors argue that all the § 1292(b) factors are satisfied here.  They particularly note that this appeal presents one of those rare instances where there is substantial ground for difference of opinion, as the bankruptcy court's decision is the only one in Maine on the applicability of BFP to automatic tax foreclosures.  They also insist that hearing an immediate appeal in this instance will "materially advance the termination of the litigation by determining whether [Ames] is still involved in the litigation which effects the scope, course, and type of discovery that is conducted along with the issues at trial . . . ."  Our own examination, however, reveals the Debtors cannot satisfy the conjunctive requirements of § 1292(b).

### 1.    Controlling Question of Law

We begin the statutory analysis with the requirement that a controlling question of law be at issue.  "A controlling question of law usually involves a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than an application of law to the facts."  Boniface v. Viliena, 417 F. Supp. 3d 113, 123 (D. Mass. 2019) (citation and

internal quotation marks omitted); <u>see also</u> <u>Watson v. Boyajian (In re Watson)</u>, 309 B.R. 652, 659 (B.A.P. 1st Cir. 2004) (stating a controlling issue of law is one that "controls the outcome of the underlying case") (citation omitted), <u>aff'd</u>, 403 F.3d 1 (1st Cir. 2005).  Here, we easily conclude this appeal involves a controlling question of law, at least to the extent that the Ames Summary Judgment Order depends on the bankruptcy court's conclusion that the automatic tax foreclosure of the Property under Me. Rev. Stat. Ann. tit. 36, § 943 did not satisfy the "reasonably equivalent value" element of § 548(a)(1)(B).

## 2.    Substantial Ground for Difference of Opinion

"To warrant interlocutory review, the order on appeal must," as noted above, "involve a legal issue on which there is 'substantial ground for difference of opinion.'" <u>In re Bank of New Eng. Corp.</u>, 218 B.R. at 653 (citing 28 U.S.C. § 1292(b)).  "Circuit law limits the statutory anodyne . . . to rare cases where the proposed . . . appeal presents one or more difficult and <em>pivotal</em> questions of law not settled by controlling authority."  <u>Id.</u> (citations and internal quotation marks omitted).

There is no statutory definition of the phrase "substantial ground for difference of opinion."  <u>In re Bailey</u>, 592 B.R. at 411.  Consequently, "[c]ourts have struggled with determining whether the difference of opinion as to a controlling question of law is 'substantial' or 'merely metaphysical.'" <u>Tantaros v. Fox News Network, LLC.</u>, 465 F. Supp. 3d 385, 391 (S.D.N.Y. 2020) (citation omitted).  In fulfilling its inquiry on this prong, however, "a court may consider authority from within and beyond the circuit in which it sits."  <u>Colonial Bank v. Freeman (In re Pac. Forest Prods. Corp.)</u>, 335 B.R. 910, 922 (S.D. Fla. 2005) (citing <u>Masters, Mates & Pilots Plans v. Lykes Bros. Steamship Co. (In re Lykes Bros. Steamship Co.)</u>, 200 B.R. 933, 938 (M.D. Fla. 1996)).  "[D]ecisional law . . . provides guidance regarding the parameters

of a 'substantial ground for difference of opinion.'" In re Bailey, 592 B.R. at 410. We

previously summarized those parameters in Bailey:

> [I]n Carabello-Seda [v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir.
> 2005)], the First Circuit found no substantial ground for difference of opinion
> where there were two district court opinions [from the same district] with similar
> holdings on the controlling issue. . . .  In another case, a Massachusetts district
> court denied interlocutory review where there was no "blazing split" among the
> circuits on the controlling issue and the party seeking review was relying on a
> "controversial twenty-five year old opinion." In re Lupron Mktg. & Sales
> Practices Litig., 313 F. Supp. 8, 12 (D. Mass. 2004) (internal quotations
> omitted). . . .  On the other hand, some courts have ruled that a "substantial
> ground for difference of opinion" existed in situations where: (1) "case law to
> date demonstrate[d] marked litigant confusion and disagreement," Natale v.
> Pfizer, Inc., 379 F. Supp. 161, 182 (D. Mass. 2005); (2) there was "stark
> division among the [ ] circuits," Canty v. Old Rochester Reg'l Sch. Dist., 54 F.
> Supp. 2d 66, 77 (D. Mass. 1999); or (3) the circuits were split and the court
> followed the minority view, Rodriquez v. Banco Cent., 917 F.2d 664, 665 (1st
> Cir. 1990).  As one commentator noted, "[l]ack of circuit decisional law, together
> with 'confusion' in other decisions in other cases or circuits, has been found to
> provide the necessary substantial grounds for difference of opinion." Tory
> Weigand, Discretionary Interlocutory Appeals Under 28 U.S.C. § 1292(b): A First
> Circuit Survey and Review, Roger Williams U.L. Rev., Winter 2014, at 207 &
> n.131, 132 (citing among others, Philip Morris, Inc. v. Harshbarger, 957 F. Supp.
> 327, 330 (D. Mass. 1997) (stating issue was not resolved by any directly
> controlling authority); Cabral v. Sullivan, 757 F. Supp. 107, 111 (D. Mass. 1991)
> (noting issue was matter of first impression in the circuit); Miara v. First
> Allmerica Fin. Life Ins. Co., 379 F. Supp. 2d 20, 48 (D. Mass. 2005)).

Id. at 410-11.

Additionally, and of particular relevance here, courts have stated it is simply not enough

for interlocutory review that there is lack of authority on the controlling issue or the question is

one of first impression. See In re Pac. Forest Prods. Corp., 335 B.R. at 922.  In Bailey, we

explicitly rejected the notion that the novelty of a particular question was sufficient to justify

immediate appeal:

> Simply because the First Circuit has not ruled on the question does not qualify the
> issue as one for which there is substantial disagreement. See Admiral Ins. Co. v.
> Willson (In re Cent. La. Grain Co-op, Inc.), 489 B.R. 403, 412 (W.D. La. 2013)
> ("Simply because a court is the first to rule on a question . . . does not qualify the

issue as one over which there is substantial disagreement.") (citation, internal quotations, and emphasis omitted). "[M]ere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." Flor v. Bot Fin. Corp. (In re Flor), 79 F.3d 281, 284 (2d Cir. 1996) (citations omitted); see also Lucas v. Bell Trans, 2009 WL 3336112, at *4 (D. Nev. Oct. 14, 2009) (stating whether a matter is of first impression is not controlling, where the issue is one of straightforward statutory interpretation). "If questions of first impression alone were sufficient to warrant . . . an immediate appeal," courts of appeals "would be besieged with piecemeal interlocutory appeals." Shaup v. Frederickson, No. 97-7260, 1998 WL 800321, at *3 (E.D. Pa. Nov. 17, 1998). "[I]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." In re Flor, 79 F.3d at 284 (citation omitted) (internal quotations omitted).

In re Bailey, 592 B.R. at 413.

Here, the bankruptcy court identified "[t]he issue of the applicability of BFP to automatic tax foreclosure sales" in Maine as a "matter of first impression." In re Riendeau, 2022 WL 4855523, at *5.[11] In deciding the issue, the court began by surveying the diverging opinions among courts of varying levels on the issue. See id. at *3. This survey disclosed that in the aftermath of the BFP decision, courts essentially fell into one of two decisive camps on the issue. Notably, all the courts extending the BFP holding to tax lien foreclosure sales "involve[d] tax lien foreclosure statutes which, unlike 36 M.R.S.A. § 943, include a competitive bidding process." Id. These courts reasoned that such statutes afforded the same protections as mortgage foreclosure statutes. See id. (collecting cases). On the other hand, those courts that declined to extend the BFP holding seemed uniformly to involve strict foreclosure statutes "which, like Maine's statute, are more akin to a forfeiture than an auction process." See id. (collecting cases); see also In re Wentworth, 221 B.R. at 319-20 (stating "[t]he rationale of the cases extending BFP to tax foreclosure sales does not apply to the instant matter because under Maine's forfeiture

---

[11]  As a Connecticut bankruptcy court decision regarding Me. Rev. Stat. Ann. tit. 36, § 943, Wentworth does not rise to the level of controlling law on the issue but constitutes persuasive authority.

procedure for foreclosure of tax liens, the property was transferred without the possibility of

judicial oversight, without competitive bidding, and without a public sale").  Thus, the

bankruptcy court's survey reveals that, while courts are split on the controlling issue, the division

is not the product of confusion or intellectual debate.  Rather, courts seem to agree that whether

to extend the BFP holding depends on the character of the applicable foreclosure statute, itself,

as either a strict foreclosure statute or one that provides for a competitive bidding process.

Indeed, the bankruptcy court had no difficulty in siding with the Wentworth court and the

character of Me. Rev. Stat. Ann. tit. 36, § 943 as "akin to a forfeiture" appears to have provided

the sole ground for its decision.

In light of the foregoing, although the "reasonably equivalent value" question is one of

first impression in Maine, and different courts have decided the issue with varying outcomes

depending on the character of the applicable foreclosure statute, we nonetheless conclude that the

Debtors have not demonstrated that there is a "substantial ground for difference of opinion" as to

the controlling legal issue.

### 3.    Materially Advance Ultimate Termination of the Litigation

"An interlocutory appeal materially advances the ultimate termination of the litigation

where resolution of the issue on appeal 'greatly assist[s]' in resolving the underlying matter, and

does not unnecessarily delay" its resolution.  In re Watson, 309 B.R. at 660.  An interlocutory

appeal will also materially advance the litigation "if it will save substantial judicial resources and

litigant expenses."  Energy Conversion Devices Liquidation Tr. v. Ovonyx, Inc. (In re Energy

Conversion Devices, Inc.), 638 B.R. 81, 95 (E.D. Mich. 2022) (citation omitted).  This

requirement "is 'closely tied' to the controlling-question-of-law element" and "is satisfied if

reversal of the [c]ourt's decision advances the termination of the litigation." <u>Meijer, Inc. v. Ranbaxy Inc.</u>, 245 F. Supp. 3d 312, 315 (D. Mass. 2017) (citations omitted).

We cannot say that an immediate appeal, with the potential for reversal of the Ames Summary Judgment Order, would materially advance the ultimate termination of the litigation. Indeed, reversal might yield the opposite outcome—remand of Count IV to the bankruptcy court for trial and the resulting delay those proceedings would entail. We are therefore unpersuaded by the Debtors' argument that an immediate appeal would materially advance the termination of the litigation by determining the litigation's scope.

Because the Debtors cannot satisfy two of the three § 1292(b) criteria, <u>see</u> <u>In re Madoff</u>, 2017 WL 4417701, at *3 n.5, the Ames Summary Judgment Order does not qualify as one of those "hen's-teeth rare" orders warranting interlocutory review under that statute. <u>Camacho</u>, 369 F.3d at 573. Accordingly, we will not exercise our discretionary authority to hear this interlocutory appeal by resorting to those criteria.

## B. Collateral Order Doctrine

We may also grant leave to appeal if the Ames Summary Judgment Order falls within that "'small class' of decisions, termed 'collateral orders'"—those orders "'which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" <u>In re Bank of New Eng. Corp.</u>, 218 B.R. at 649 (quoting <u>Cohen v. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541, 546 (1949)) (other citation omitted). "The First Circuit's model for identifying collateral orders is four-pronged." <u>Id.</u> To qualify as a reviewable collateral order, the Ames Summary Judgment Order on Count IV must:

(1) concern a collateral issue so conceptually distinct from other issues being litigated in the underlying action that an immediate appeal would neither disrupt the main action, nor threaten to deprive the appellate court of useful context which might be derived from subsequent developments in the litigation;

(2) completely and conclusively resolve the collateral issue;

(3) infringe rights which appellant could not effectively vindicate in an appeal after final judgment in the case; and

(4) involve an important or unsettled legal issue, rather than merely challenge discretionary trial court rulings.

United States v. Quintana-Aguayo, 235 F.3d 682, 684 (1st Cir. 2000) (quoting United States v. Kouri-Perez, 187 F.3d 1, 5 (1st Cir. 1999)); see also Godin v. Schencks, 629 F.3d 79, 84 (1st Cir. 2010) (articulating similar four-factor test). "Stated differently, the collateral order doctrine applies when the trial court's decision is sufficiently final, urgent, important, and separable." Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt Bd. for P.R., 35 F.4th 1, 11 (1st Cir. 2022) (citation omitted), cert. granted, 2022 WL 4651269 (Oct. 3, 2022). "If [the] order fails to meet any one of these 'conjunctive' conditions, it is not appealable under the collateral order doctrine." U.S. Fid. & Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 55 (1st Cir. 2009) (citation and footnote omitted).

We highlight two additional principles relevant to the application of the collateral order doctrine. First, "[t]he burden of establishing [appellate] jurisdiction rests with the party who asserts its existence"—in this instance the Debtors. Id. (citation and internal quotation marks omitted). "Second, as a general matter, the collateral order doctrine is applied narrowly and interpreted strictly." Id. (citation and internal quotation marks omitted).

The Debtors insist that the Ames Summary Judgment Order satisfies all elements of the collateral order doctrine. As for whether that ruling involves a conceptually distinct issue as

required, the Debtors argue: "The liability of the Town, under the sole remaining count . . . , was not influenced by the Bankruptcy Court's decision granting [Ames] summary judgment." Consequently, they argue, the Ames Summary Judgment Order "is completely separate from the sole remaining count involving the Town."  Contending that the challenged order effectively ended Ames' "involvement in the litigation," the Debtors assert the "conclusive determination" element of the collateral order doctrine is met.  The Debtors further maintain that the challenged order satisfies the "importance" element of the collateral order doctrine because the "results of this appeal hold significant precedential promise for the jurisdiction of Maine."  With respect to whether the challenged order involves rights the Debtors cannot vindicate on appeal—the so-called "unreviewability" prong—the Debtors contend they will be irreparably harmed if review is delayed because there exists the "distinct possibility that French will transfer the [P]roperty," which remains their primary residence.

Having tested the Debtors' arguments, element by element, we are unpersuaded.

### 1.    Whether the Order Involves a Conceptually Distinct, Collateral Issue

Mindful that the elements of the collateral order doctrine are conjunctive, we focus on the first element, above.  Here, we need go no further than the language of the Amended Memorandum to conclude that the Ames Summary Judgment Order does not fall within the scope of the collateral order doctrine.  There, the bankruptcy court explicitly stated with respect to Count IV: "The Court, having found that Count III is a viable claim, must assume, for purposes of the Ames [Summary Judgment Motion] on Count IV, that the automatic tax foreclosure transaction was fraudulent under . . . § 548."  In re Riendeau, 2022 WL 4855523, at *4.  By incorporating its ruling on Count III into its Count IV ruling in this manner, the court satisfied the fraud element of § 548.  See 11 U.S.C. § 548; see also Cruickshank v. Casey (In re

Bos. Grand Prix, LLC), 624 B.R. 1, 17-18 (Bankr. D. Mass. 2020) (describing elements of fraud under § 548).  Far from being "completely separate," In re Bank of New England Corp., 218 B.R. at 649, the two counts are thus inextricably bound.

Although our analysis could end here, lest there be any doubt, we proceed to the remaining prongs, where the Ames Summary Judgment Order—lacking in conclusiveness, importance, and unreviewability—is further doomed for purposes of applying the collateral order doctrine.

> **2.    Whether the Order Completely and Conclusively Resolved the Collateral Issue**

The second prong of the collateral order doctrine inquires whether the challenged order conclusively resolved a collateral issue.  Because "important issues await resolution in the adversary proceeding," we cannot characterize the Ames Summary Judgment Order as conclusive.  In re Bank of New Eng. Corp., 218 B.R. at 649-50 (concluding partial summary judgment order on a single count did not satisfy conclusive determination prong).  Depending on the outcome of the trial on Count III, the ruling on Count IV might be subject to revision by the bankruptcy court.  See Fed. R. Civ. P. 54(b).  Under such circumstances, it is impossible to characterize the Ames Summary Judgment Order as conclusive.  Consequently, the Debtors' argument that the Ames Summary Judgment Order "conclusively ended" Ames' involvement in the litigation is unconvincing.

> **3.    Whether the Order Involves a Sufficiently Important Issue**

The Debtors argue this appeal passes the importance test because it has "precedential promise."  The quoted phrase is from Bank of New England, where the Panel characterized the challenged interlocutory order as "hold[ing] minimal precedential promise" and declined to

accept jurisdiction over it.  218 B.R. at 650 (citation omitted).[12]  By clinging to this phrase

without reference to more recent cases involving orders that *have* passed the importance test,

however, the Debtors miss the mark.  While there was "scant" case law defining the importance

element when Bank of New England issued, 218 B.R. at 650 n.13, since then, both the First

Circuit and the Supreme Court have supplied ample guidance.  Embracing the Supreme Court's

definition, the First Circuit instructs that to be "important" for purposes of satisfying the

collateral order doctrine "means 'being weightier than the societal interests advanced by the

ordinary operation of final judgment principles.'"  Gill v. Gulfstream Park Racing Ass'n, Inc.,

399 F.3d 391, 399 (1st Cir. 2005) (quoting Digital Equip. Corp., 511 U.S. at 879).  Thus, for

example, the issue on appeal in Lee-Barnes v. Puerto Ven Quarry Corp.—whether the district

court erred in deeming a surety bond void—did not rise to the level of significance required for

application of the doctrine.  See 513 F.3d 20, 26 (1st Cir. 2008).  In contrast, a district court's

order denying a state's claim that the Eleventh Amendment provides full immunity from suit

satisfied the "importance" element.  Centro de Periodismo Investigativo, Inc., 35 F.4th at 11.

Moreover, the Supreme Court instructs that the "importance" inquiry should focus on whether

delaying review would "imperil a substantial public interest" or "some particular value of a high

order."  Will v. Hallock, 546 U.S. 345, 352-53 (2006) (citations omitted).[13]

---

[12]  See also In re Cont'l Inv. Corp., 637 F.2d 1, 6 (1st Cir. 1980) (where the First Circuit stated, in an early case, that importance in the context of collateral order doctrine refers to "the *scope* of precedential value") (emphasis added).

[13]  The Will Court offered other examples of public interests that were of sufficient magnitude to justify departure from the final judgment rule.  Those interests included: "honoring the separation of powers," see Nixon v. Fitzgerald, 457 U.S. 731, 749 (1982); "preserving the efficiency of government and the initiative of its officials," see Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); and "respecting a State's dignitary interests," see P. R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).  Will, 546 U.S. at 346.

23

The issue presented by Count IV is not of sufficient magnitude to bring it within the scope of the collateral order doctrine. This is not to trivialize the importance of the outcome of this appeal to the parties. However, the scale of the *societal* interest advanced by the order at bar is more akin to the appealed order in Lee-Barnes than the illustrations cited by the Supreme Court in Will or the example represented by the appealed order in Centro de Periodismo Investigativo, Inc. The Ames Summary Judgment Order lacks the constitutional dimension confronting the First Circuit in the latter case. Moreover, beyond invoking the "precedential value" incantation, the Debtors have failed to identify a substantial "public interest" or "value of a high order" that would be imperiled by deferring appellate review until after entry of a final judgment. Will, 546 U.S. at 352-53. Thus, the precedential value of the Ames Summary Judgment Order is insufficient to satisfy the importance test for purposes of applying the collateral order doctrine.

### 4.    Whether the Challenged Order Involves Rights the Debtors Cannot Effectively Vindicate on Appeal

That brings us to the question of whether the right advanced by the challenged order is "adequately vindicable" on appeal after entry of a final judgment—also known as the "unreviewability" prong. See In re Bank of New Eng. Corp., 218 B.R. at 651 (using the term "unreviewability" to describe this prong). This prong has been equated to "the threat of 'irreparable harm' if review is delayed." Id. (citing Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 376 (1981)) (other citations omitted). The Supreme Court explains that this question "simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement." Digital Equip. Corp., 511 U.S. at 878-79 (citation omitted). In other words, "importance and unreviewability are inseparable inquiries." Grace v. Vannoy, 826 F.3d 813, 816 (5th Cir. 2016) (citing Mohawk

24

Indus., Inc. v. Carpenter, 558 U.S. 100, 107 (2009)).  "That a ruling 'may burden litigants in

ways that are only imperfectly reparable by appellate reversal of a final [trial] court judgment . . .

has never sufficed."  Mohawk Indus., Inc., 558 U.S. at 107 (quoting Digital Equip. Corp., 511

U.S. at 872).  "Instead, the decisive consideration is whether delaying review until the entry of

final judgment 'would imperil a substantial public interest' or 'some particular value of a high

order.'"  Id. (quoting Will, 546 U.S. at 352-53).  The Supreme Court further instructs:

> In making this determination, we do not engage in an individualized jurisdictional
> inquiry.  Rather, our focus is on the entire category to which a claim belongs.  As
> long as the class of claims, taken as a whole, can be adequately vindicated by
> other means, the chance that the litigation at hand might be speeded, or a
> particular injustic[e] averted, does not provide a basis for jurisdiction under [28
> U.S.C.] § 1291.

Id. (citations and internal quotation marks omitted).[14]

　　　As previously stated, the Debtors have not demonstrated, or attempted to demonstrate,

that, in addition to their own, a public interest is at risk; nor have they indicated that an entire

class of orders is incapable of vindication on appeal from a final judgment.  In light of the

Supreme Court's guidance in Digital Equipment and Mohawk Industries, the prospect that

French might transfer the Property is not a sufficient basis for application of the collateral order

doctrine even though the Property is the Debtors' residence, given our conclusion that delaying

review of the challenged order does not "imperil a substantial *public* interest" or "some particular

value of a high order."  Id. (emphasis added).

---

[14]  See, e.g., Doe v. Mass. Inst. of Tech., 46 F.4th 61, 66 (1st Cir. 2022) (stating class of orders denying
motions to proceed by pseudonym are immediately appealable under the collateral order doctrine because
"public interest . . . would be imperiled by deferring appellate review of a pseudonym denial until after
the entry of final judgment, with the litigant compelled to proceed unmasked").

Accordingly, the Ames Summary Judgment Order does not fall within that small class of orders immediately appealable as a collateral order. We, therefore, decline to hear this appeal pursuant to that doctrine.

## **CONCLUSION**

Having concluded that the Ames Summary Judgment Order is interlocutory, that the bankruptcy court did not expressly certify entry of a final judgment against the Debtors, and that the § 1292(b) criteria are not satisfied, we decline to exercise our discretion to consider this appeal under 28 U.S.C. § 158(a)(3). We also conclude that the collateral order doctrine is not satisfied. Therefore, the Motion to Dismiss is **GRANTED** and this appeal is **DISMISSED**.


FOR THE PANEL:


Dated: December 8, 2022               By:      /s/ Leslie C. Storm
                                                Leslie C. Storm, Clerk



[cc: Hon.  Peter G. Cary; Clerk, U.S. Bankruptcy Court, District of Maine; and
     Neil Shankman, Esq.; Jon Plourde, Esq.; Daniel Cummings, Esq.]